UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| LARRY TANG,<br><br>    PLAINTIFF<br><br>Vs.<br><br>NORTHPOLE, LTD., and<br>TOFASCO OF AMERICA, INC.<br><br>    DEFENDANT | No. 5:11-cv-05112-RTD |

**BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT NORTHPOLE, LTD.'S
MOTION TO DISMISSON GROUNDS OF EQUITABLE ESTOPPEL**

INTRODUCTION

Though Defendant Northpole, Ltd. (Northpole) filed its Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and 12(d), its Motion to Dismiss should be converted to a motion for summary judgment under Fed. R. Civ. P. 56 because its Motion to Dismiss presents matters that are beyond the pleadings. Northpole supports its motion by claiming that Plaintiff Larry Tang (Mr. Tang) remained silent after threatening immediate and aggressive legal action against Northpole for infringement on his patent. It alleges that it relied on Mr. Tang's silence to its detriment and that this lawsuit will cause it to suffer economic and evidentiary prejudice. However, Northpole has misrepresented the facts in an attempt to support its claim. Though Mr. Tang was silent for an extended period of time, Mr. Tang did not make any threats of immediate or aggressive enforcement of his patent. Neither did Northpole rely on Mr. Tang's silence or suffer any prejudice by Mr. Tang's delayed enforcement. Because there are clearly genuine issues of material fact showing that Mr. Tang did not engage in misconduct to induce reliance resulting in Northpole suffering prejudice, Northpole's motion should be denied.

## FACTUAL BACKGROUND

On or about November 27, 2001, the United States Patent Office granted Mr. Tang patent number 6,322,138 for the protection of a collapsible patio chair. In or about February 2002, Mr. Tang was instructed by his patent attorney Charles Brodsky of Marlboro, New Jersey that Northpole violated his patent by manufacturing and selling products practically similar to the object(s) described in Mr. Tang's patent.

On or about February 19, 2002, with authority granted by Mr. Tang, Mr. Brodsky drafted and mailed a letter to the Northpole to place it on notice of the infringement and to negotiate a deal for Northpole's use of the patent design. The letter suggested a lawsuit may result if Northpole continued its infringement or failed to respond but did not promise litigation. Northpole failed to respond to Mr. Tang's letter.

On or about March 21, 2002, Mr. Brodsky sent a second letter to the Northpole to once again seek a settlement and to warn of possible legal action if the infringement continued. Northpole did not respond to the second letter and continued to manufacture and sell products in violation of Mr. Tang's patent. At no time did Northpole make any effort to communicate with Mr. Tang on this issue until he filed his lawsuit.

Mr. Tang made inquired as to the estimated attorney's fees and the costs that would be required for enforcing the patent against Northpole and determined he was not in a position to proceed with enforcement at that time.

On or about May 2010, Mr. Tang made a visit to Northwest Arkansas and toured several local retail stores when he encountered several collapsible chairs that appeared to violate his patent. Some of these chairs were manufactured by Northpole. Mr. Tang consulted with his attorney Darrell Gibby who agreed to look into the matter for him. Images of the chairs were

delivered to Mr. Brodsky who verified that some of the chairs manufactured by Northpole were in violation of the patent.

Mr. Tang filed a complaint for patent infringement against Northpole on or about April 28, 2011, and on or about June 10, 2011, Northpole filed its Motion to Dismiss on Grounds of Equitable Estoppel.

## STANDARD OF REVIEW

A Motion to Dismiss based on Fed. R. Civ. P. 12(b)(6) requires a defendant to show that the plaintiff has failed to state facts upon which relief can be granted. Fed. R. Civ. P. 12(d) provides that if a motion to dismiss presents matters outside of the pleadings it will be treated as a motion for summary judgment under Fed. R. Civ. P. 56. Because Northpole's motion presents matters outside of the pleadings, its motion should, therefore, be treated as one for summary judgment. Apparently, this conversion of the motion is anticipated by Northpole as it filed its motion "pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(d)," which provides for a conversion of a motion from one of dismissal to one of summary judgment.

Summary judgment is only appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining the propriety of summary judgment, credibility determinations may not be made, and the evidence must be viewed favorably to the non-movant, with doubts resolved and reasonable inferences drawn in the non-movant's favor. *Wanlass v. Fedders,* 145 F.3d 1461, 1463 (Fed. Cir. 1998); See also, *Aukerman v. Chaides* 960 F.2d 1020 (Fed. Cir. 1992). Further, on Summary Judgment, any inference against the patentee must be the *only possible inference* from the evidence. *Aukerman,* 960 F.2d at 1044. (Emphasis added). Finally, in particular

application to this case involving a motion based on grounds of estoppel, no presumption is applicable to the defense of equitable estoppel as it is in laches. *Id.* at 1026.

## LEGAL ANALYSIS

The facts in this case do not support Northpole's defense of equitable estoppel. Equitable estoppel has three elements: 1) the patentee's conduct must support an inference that the patentee did not intend to press an infringement claim against the alleged infringer, and statements and conduct of the patentee must communicate something in a misleading way; 2) the alleged infringer relies on the misleading conduct; and 3) due to its reliance, the alleged infringer will be materially prejudiced which may be a change of economic position or loss of evidence. *Id.* at 1042-43.

**I.   Mr. Tang's silence did not qualify as misleading conduct because he did not threaten immediate or vigorous enforcement of his patent.**

Northpole claims that Mr. Tang's threats of a lawsuit with subsequent silence and inaction constitutes misconduct sufficient to satisfy the first element of equitable estoppel. To successfully defend a claim of infringement by equitable estoppel a defendant must show that the patentee, through misleading conduct, lead the alleged infringer to reasonably infer that the patentee does not intent to enforce its patent. *Stuart Meyer v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992). Such conduct includes specific statements, action, inaction, or silence where there was an obligation to speak. *Id.* Silence alone is not sufficient affirmative conduct to give rise to estoppel. *Id.* In the cases that have applied intentionally misleading silence in the patent infringement context, a patentee threatened immediate or vigorous enforcement of its patent right but then did nothing for an unreasonably long time. *Id.* at 1390. See also *Aspex*, 605 F.3d at

1310. An attempt to negotiate licenses followed by a period of silence does not, in itself, constitute the necessary misleading conduct. *Aspex*, 605 F.3d at 1308.

Northpole cites both *Aspex Eyewear Inc. v. Contour Optik, Inc.* and *Aukerman* to support its claim that Mr. Tang's warning of a possible lawsuit along with his silence is sufficient conduct to support an inference that Mr. Tang did not intend to enforce his patent. However, both cases are distinguishable from this case and do not support the claim that Mr. Tang's conduct qualifies a defense of equitable estoppel.

As stated by Northpole, *Aukerman* does indicate that an objection of a patentee along with delayed follow up is the most common situation in applying the defense of estoppel. *Aukerman*, 960 F.2d at 1042. However, *Aukerman* is also very clear that misleading inaction must be "coupled with other factors." *Id.* "…[A] plaintiff's inaction must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Id.* As shown in *Aukerman*, where the delay of enforcement by the plaintiff was nine years, mere silence is not sufficient to defend a case under equitable estoppel. *Id.*

Though *Aukerman* provides that other factors are needed for estoppel, there are no facts in this case that would qualify any silence by Mr. Tang as misleading. Merely sending letters in attempt to negotiate a settlement are not misleading. Suggesting the possibility of a lawsuit is not misleading. Instead, much stronger and extreme threats are required to constitute misleading conduct. In *Aspex* the Court held that "Intentionally misleading silence arises when a patentee threatened **immediate or vigorous** enforcement of its patent rights but then did nothing for an unreasonably long time." *Aspex*, 605 F.3d at 1310. (Empasis added). The words "immediate" and "vigorous" are very indicative of the strong level of threat needed to qualify a defense of

misleading silence. "Immediate" means at the extremely near future, and vigorous enforcement is much stronger and persistent than is a mere warning of possible enforcement. Yet, the letters delivered by Mr. Tang by his attorney Mr. Brodsky hardly communicates a threat and certainly do not constitute of immediate and vigorous enforcement. Instead, the letters are more for the purpose of pursuing a settlement than they are a warning of litigation. In the first letter, Mr. Brodsky stated,

> The obvious alternative, of course, is a lawsuit demanding that all further manufacturing, marketing and distribution of the infringing product cease and desist. Experience has shown that most lawsuits of such sort get settled, and **it is the policy of this office to try to explore such possibilities before filing suit in which the only ones to benefit are the lawyers. Please contact us by March 12, 2002 with your thoughts for resolving this patent infringement issue.** If we do not hear from you by that date, we can only interpret that as an assent on your part for our client to take all steps necessary to protect and safeguard his rights in his patent. (Emphasis added).

In the second letter, Mr. Brodsky stated, "If I do not hear from you as to this by April 15, 2002, we can only regard that as a derogation of my client's patent rights and your authorization for my client to do whatever may be deemed necessary to protect its position." These are the extent of the perceived "threats" that were made by Mr. Tang. They do nothing more than leave the possibility of a lawsuit on the table. There is neither a threat of "vigorous" nor "immediate" enforcement. This is merely nothing more than a soft warning to Northpole that Mr. Tang might consider legal action if the matter is not resolved. They leave open the possibility of Mr. Tang choosing to not file a lawsuit even though he could consider Northpole's disregard as an invitation to file one. Because there are no "other factors" coupled with a time of silence in this case, the first element of equitable estoppels fails.

Northpole relies on *Aspex* to support its claim that Mr. Tang's conduct was misleading to qualify for estoppel. However, the facts in *Aspex* are distinguishable from this case. In *Aspex*,

the plaintiff sent a letter to the defendant that promised a lawsuit if the defendant's infringement on its 747 patent continued. *Id*. at 1309. In particular, the letter stated that the plaintiff has a policy of "vigorously" enforcing infringement on its patents. *Id*. The defendant responded to the plaintiff's letter with a request for more information. *Id*. The plaintiff then sent a letter in reply that did not even mention the 747 patent but, instead, identified possible infringement of other patents. *Id*. The defendant relied on the plaintiff's failure to reply with the requested information on the 747 patent and considered this conduct as the plaintiff's intent to not enforce that particular claim. *Id*. The plaintiff seemed to have moved on from the 747 claim because he was making new claims to the defendant without even mentioning the 747 claim. *Id*. After a period of silence on the 747 claim, the plaintiff once again took up the issue of the 747 claim and filed suit when the defendant refused to cease and desist. *Id*. The Court held that the plaintiff's failure to respond to the defendant's request for more information on the 747 patent followed by a extended period of silence, after being threatened with "vigorous" enforcement of its patent, mislead the defendant into believing that the plaintiff had abandoned the claim. *Id*.

The facts in this case are much different than those of *Aspex*. First, Northpole never responded to Mr. Tang's letters as did the defendant in *Aspex*. Instead of inquiring as to the nature of the claim as did the defendant in *Aspex*, Northpole simply ignored Mr. Tang. *Aspex* had a duty to speak because the defendant's reply placed upon the plaintiff the burden to respond with more information; but in this case, Mr. Tang had already spoken twice with no response from Northpole. If there was a duty to speak, Mr. Tang met the duty; and the burden to speak then fell upon Northpole. As the saying goes, the ball was in Northpole's court.

*Aspex* is further distinguishable from this case because *Aspex's* letter contained a "vigorous" threat of enforcement while Mr. Brodsky's letters for Mr. Tang merely suggested a

lawsuit as a possible alternative. This is significant as the Court's have said that mere silence after efforts to negotiate is not enough to mislead. The suggestion of a lawsuit in this case do not nearly rise to the level of threat found in *Aspex*. Simply comparing the policies of each patentee is very revealing. Aspex's states its policy as follows:

> It has been our policy and continues to be our strong intention to fully and vigoursly enforce our rights under the exclusive license to these magnetic frame attachments. *Id.* at 1308.

In stark contrast, Mr. Tang's policy through Mr. Brodsky is as follows:

> Experience has shown that most lawsuits of such sort get settled, and it is the policy of this office to try to explore such possibilities before filing suit, in which the only ones to benefit are the lawyers. See Exhibit "A" of Mr. Tang's response to this motion.

In viewing these policies side-by-side the differences are clear. While Aspex promises vicious litigation, Mr. Brodsky hopes to avoid it.

Because the facts in *Aspex* are clearly distinguishable from this case, Northpole's comparison of the two cases in support of its position fails.

It is very obvious that, to sustain its motion, Northpole needs Mr. Brodsky's letters on Mr. Tang's behalf to be much more threatening than they actually are. In its motion and supporting brief, it is has pushed the edge of misrepresentation by suggesting that these letters contained language that they actually do not contain. Paragraph 2 of Northpole's motion reads, "In that letter, Tang demanded a response by March 12, 2002 and, alternatively, threatened immediate and aggressive enforcement of his patent rights." Paragraph 5 reads in part, "This letter established a second deadline of April 15, 2002, and again threatened immediate and aggressive enforcement of the '138 patent." Paragraph 8 states, "Tang's aggressive threats of litigation, followed by his silence, led Northpole to reasonably believe that he had abandoned his

claim. Paragraph 2 of page1 of Northpole's supporting brief reads, "These letters threatened vigorous and imminent enforcement of Tang's patent rights." Similar language in paragraph 4 of page 2 of the brief reads, "The letter demanded a response from Northpole and threatened vigorous enforcement of Tang's patent rights." The final paragraph of page 2 alleges that "Tang's letter made it plain that if Northpole did not respond by March 12, 2002, Tang would file a patent infringement lawsuit...."

It is interesting that the key words used by Northpole in their motion and brief are the same words found in many of the cases addressing this issue. Yet, the words "threat," "immediate," "imminent," "aggressive," and "vigorous" or any words suggestive of these are not found in Mr. Brodsky's letters. A review of these letters show they are anything but a threat of immediate, vigorous, aggressive enforcement of patent rights. There is simply no promise of immediate litigation. The language makes no reference whatsoever of vigorous or aggressive enforcement. Nothing in the letters suggests a lawsuit is imminent. Instead, the letters discourage the idea of having to reach that undesirable step, and they seek to communicate with the purpose of settling the issue. However, this is certainly not the suggestion of Northpole. Northpole's repeated claims that Mr. Brodsky's letters contain language that they simply do not contain is nothing more than an attempt to manipulate and mold the facts to fit into a pattern that is necessary for it to prevail on its motion. The facts are clear. The letters speak for themselves, and these repeated attempts to misrepresent and change their language fail. Because Northpole cannot show that Mr. Tang engaged in any misleading conduct, despite its best efforts to manipulate the clear facts, its defense of equitable estoppel cannot stand.

II. Northpole did not Rely on Mr. Tang's silence when it continued its conduct of infringement because it was already relying on a belief that Mr. Tang's patent was invalid.

The second element in equitable estoppel is that the defendant must prove it relied on misconduct to its detriment. That reliance must show that the infringer had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead. *Aukerman,* 605 F.3d at 1311. It is clear, however, that Northpole did not suffer detriment in reliance upon Mr. Tang's alleged misconduct or silence. Instead, it relied upon its belief that Mr. Tang's patent was not valid. Northpole admits to holding this belief long before silence by Mr. Tang could have caused any level of detrimental reliance. Paragraph 4 of page 3 of Northpole's supporting brief reads, "Not having any interest in licensing a patent it believed to be invalid, Northpole ultimately chose not to respond to Tang's allegation and allowed his March 12, 2002 deadline to pass." Northpole relied so much on their belief that the patent was invalid that it completely declined to explain its position in response to Mr. Tang's letters. Whether Mr. Tang's patent is invalid is not at issue in Northpole's motion, but it is clear that Northpole continued its actions because it relied on its belief that the patent was invalid, not because it relied on Mr. Tang's alleged misconduct or silence. Because Northpole was, at the time shortly after receiving the letters, relying on the belief that it was not infringing on Mr. Tang's patent, Northpole's claim that reliance on Mr. Tang's misleading conduct to its detriment fails. Whatever detriment, Northpole suffered was a result of its decision to rely on a perception that the patent was invalid; and as long as Northpole held that belief any amount of silence by Mr. Tang would have caused not further detriment.

### III. Northpole did not suffer economic or evidentiary prejudice by as a result of Mr. Tang's silence.

The third element that defendant must prove is that it was materially prejudiced by Plaintiff's misconduct to which it relied upon; but because there was no misconduct and no reliance, any prejudice is a moot point. However, Mr. Tang will respond to the argument.

The third element to prove equitable estoppel is material prejudice. Northpole argues that had Plaintiff brought suit in 2002, its liability would only have been for the sale of 9 million chairs; but within the relevant last six years, it would be liable for 25 million chairs. However, Northpole has not provided sales figures for each year from 2002, and is only speculating in this scenario that Plaintiff would sue in 2002. Therefore, one can only speculate as to what the increase in damages might have been.

Further, Northpole argues that it continued reproducing the chairs and, therefore, would be economically prejudiced by those losses of profits in this suit. However, the law is very clear that in a patent case, economic prejudice to an accused infringer must be something more than the damages awarded upon a finding of infringement. *Aukerman*, 960 F.2d at 1033. *Aukerman* states:

> Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by an earlier suit. Such damages or monetary losses are not merely those attributable to a finding of liability for infringement. Economic prejudice would then arise in every suit.

See also, *Jenn-Air Corp v. Penn Ventilator* Co., 464 F.2d 48, 49-50, 174 USPQ 419, 420 (Fed. Cir. 1972), *on remand* 394 F. Supp. 665, 185 USPQ 410 (E.D. Pa. 1975) (There was no harm to defendant in that, all that happened to it was its continuance of counterfeiting and selling its infringing product"); Tripp v. United States, 406 F2d 1066(1969). Moreover, in *Schafer v. Rector Well Equip Co.*, 155 F.2d 344, 346-47(Fed. Cir. 1946) the court states:

> It does not seem that an infringer, whose business was constantly spreading out and growing out of the infringed manufacture of an article, would acquire a legal right to continue to trespass upon the rights of another merely because the other had attempted to get him to desist by persuasion rather than be resorting to litigation. Moreover, the expansion of a business from the profits reaped by infringement is not a prejudicial change of conditions so as to authorize the defending infringer to invoke the defense of laches against a patent owner who

>has forborne to hale him into Court, meanwhile attempting to settle his claims amicably. Repeated willful trespasses confer no right to continue them.

Also see, *France Mfg. Co. v. Jefferson Elec. Co.* 106 F.2d 605 (Fed. Cir 1939, cert denied 309 U.S. 657(1940) (It is no defense to a suit for an injunction and accounting for the continuing trespasses of an infringer that the latter has been trespassing on the right of the owner of the patent for years with impunity, where he had admitted knowledge of the existence of the patent and notice of his wrong doing.)

Northpole states that it invested hundreds of thousands of dollars in its factories to produce the subject item instead of an alternative item. It also claims that it chose not to make investments in alternative designs, in light of Mr. Tang's misleading silence. Yet, an alternative design already existed and might have been used by Northpole to manufacture similar non-infringing collapsible chairs. The significant item that distinguishes the subject item from an item previously manufactured by Northpole and Tofasco is two small open channel connectors where the front legs of the collapsible chair connect. The alternative design widely used by some other manufacturers has a closed-channel connector. The balance of the components and assembly of the chair would be identical to the chairs it has been manufacturing. It is likely that whether Northpole was using Mr. Tang's connectors or other, non-infringing connectors, it would have still built the same facility to produce substantially similar chairs. It is not reasonable to believe that Northpole's investment of hundreds of thousands of dollars prejudiced them, as it would simply make a minor change in connectors and continue its business using the same machinery and processes. Therefore, Northpole did not suffer such extensive economic prejudice by relying either on its belief in the perceived invalidity of the patent or on Mr. Tang's silence.

Northpole also claims "evidentiary prejudice" as material prejudice because of the delay in filing suit. Northpole argues it has lost or destroyed evidence, people are gone and memories have dimmed. To bolster its argument, Northpole points to its Exhibit A, which includes the company's "Record Retention Schedule" which indicates Northpole's policy on how long various records should be retained. The schedule shows that for "Original patents, trademarks and copyrights (life of patent, trademarked or copyright + 3 years)" should be retained for three years. Northpole does not argue that its business practice on this account is reasonable, nor does it make reference to any authorities that would suggest that it was. Furthermore, the only evidence that is relevant in this case is the last six years of profits. Any information prior to that time frame is irrelevant to Mr. Tang's case.

Northpole also claims it had lost or discarded information that would have been evidence of the invalidity of Plaintiff's patent. The argument however is speculative and conclusory and Northpole does not give enough or sufficient information to make a finding of an argument on that issue. Furthermore, the only evidence that is relevant in this case is the last six years of profits, so any information prior to that is irrelevant.

## CONCLUSION

Though Northpole titles its motion as one for dismissal under Fed. R. Civ. P. 12(b)(6), the intent and substance of the motion cannot qualify within this rule and it should be treated as one for a Motion for Summary Judgment. In a motion for summary judgment, the facts, arguments and inferences must be viewed in the light most favorable to the non-moving party. Northpole must show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Mr. Tang has met all of Northpole arguments and has shown those arguments to fail. He has shown that genuine issues of material facts remain. For the foregoing reasons Northpole's Motion for Summary Judgment should be denied and Mr. Tang should be awarded all relief to which he may be entitled. In the alternative, and for the same reasons stated herein, Northpole's Motion to Dismiss should be denied.

Respectfully Submitted,

LARRY TANG, Plaintiff

By: /s/ Darrell W. Gibby
Darrell W. Gibby, #2007307
903 S.E. 22nd Street, Ste. 3
Bentonville, AR  72712
479-271-8898
479-271-8882 (fax)
gibbylaw@att.net

## CERTIFICATE OF SERVICE

The certify that on November 12, 2011 I electronically filed the foregoing with the Clerk of he Court using CM/ECF Filing System, which will send notification of such filing to the following:

Kevin A. Crass
Crass@fridayfirm.com

Marshall Ney
mney@mwlaw.com; jgarrett@mslaw.com; ccomer@mwlaw.com

Stephen L. Sulzer
ssulzer@mannatt.com; AStaltari@manatt.com; csadler@manatt.com

Todd Taylor
ttaylor@manatt.com; AStaltari@mannatt.com

/s/ Darrell W. Gibby