IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**LARRY TANG**                                                                              **PLAINTIFF**

v.                          **CASE NO. 5:11-CV-05112**

**NORTHPOLE Ltd. and**
**TOFASCO OF AMERICA, INC.**                                              **DEFENDANTS**

**NORTHPOLE Ltd. and**
**TOFASCO OF AMERICA, INC.**                              **COUNTER-CLAIM PLAINTIFFS**

v.

**LARRY TANG**                                                    **COUNTER-CLAIM DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Larry Tang's Amended Motion for Joinder (Doc. 147) and Brief in Support (Doc. 148), Defendant Tofasco of America, Inc.'s ("Tofasco") Response in Opposition (Doc. 158), Tang's Motion to Strike (Doc. 160) and Brief in Support (Doc. 161), and Tofasco's Response in Opposition (Doc. 162). For the reasons stated herein, Tang's Motion for Joinder is **GRANTED IN PART AND DENIED IN PART**. Tang's Motion to Strike is **DENIED AS MOOT**.

### I.   BACKGROUND

This is a patent infringement case involving a patented design for collapsible chairs. While a thorough review of the case's procedural history is unnecessary to contextualize Tang's Motions, it suffices to state that the history is tortured. The case has seen over 160 docket entries, three judges, and a nearly 11-month stay, all over a

1

period of five years. The facts of this case are also somewhat tortured, and do require a detailed recounting.

Tang filed his patent number 6,322,138 ("Tang's Patent" or "the Patent") on April 28, 2000, and the United States Patent and Trademark Office ("USPTO") approved it on November 27, 2001. Tang's Patent is for a collapsible patio chair—the kind you might take to a youth sporting event, or bring to a campsite to set up around the fire. Of particular importance is Tang's inclusion of "open connectors" on the upper-front legs of the chair. In short, having open, as opposed to closed, connectors makes the chair easier and safer to operate, and allows for more efficient manufacturing and shipping. In early 2002, Tang's attorney Charles L. Brodsky sent two letters to Northpole Ltd. and Tofasco, respectively, alleging that certain of their products fell within the scope of Tang's Patent. Tang did not file suit to enforce his patent against Northpole and Tofasco until April 28, 2011. At some point during the discovery phase of litigation, Tang began to suspect that another entity associated with Tofasco may have been selling products that infringed upon his Patent. He now seeks to join that entity, Macsports, Inc., to this suit.

The history of Macsports is convoluted and somewhat opaque. Around the same time that Edward Zheng founded Tofasco in 1993, Zheng or his wife, Carol Peng, incorporated an entity named Unity New-Tech, Inc. A few years later, in 1997 or 1998, Zheng and Peng began selling chairs under an entity or brand named Maccabee Sports. This entity or brand eventually became associated with several other entities or brands with names like Mac Kids, Mac Garden, and Mac Home. At some point, the name Maccabee Sports was shortened to Macsports because it is easier to pronounce.

On October 19, 2005, Peng—acting as President and Secretary of Unity New-Tech—filed a Certificate of Amendment of Articles of Incorporation with the California Secretary of State changing the corporation's name to Macsports, Inc.

On April 30, 2009, Peng, in her capacity as President of Macsports, entered into an Asset Purchase Agreement to sell all of Macsports' assets to Highmark Group Limited, a Cayman Islands company ("Highmark"). The director of Highmark at the time was Lin Bi Yu, a/k/a Bi Yu Lin ("Lin")—a relative of Peng's and Zheng's.[1] As part of the Asset Purchase Agreement, Highmark acquired the name "Macsports, Inc." Also per the Agreement, the former Macsports, Inc. changed its name to "MCS Corp." and dissolved within nine months.

Even after being acquired by Highmark, Macsports continues to have a close, if not indistinguishable, relationship with Tofasco. Macsports has no employees; all of its labor and management are supplied by Tofasco. Macsports and Tofasco apparently share the same physical location and facilities. Information tags on chairs sold by Macsports and Tofasco contain both companies' names. Macsports utilizes certain of Tofasco's patents in the chairs it sells. Macsports and Tofasco sell chairs using the same Federal Registration Number. Macsports' registered agent is Gang Peng, who is Peng's brother and a long-term employee of Tofasco's. Finally, Tofasco owns the rights to several Macsports trademarks, which it acquired from the USPTO *three years after* Macsports' assets were sold to Highmark.

Tofasco contends that it stopped selling the allegedly infringing chairs in 2004, just over six years before Tang filed suit in this Court. Tang suspects that Tofasco,

---

[1] The parties also had a pre-existing business relationship. In 2007, they entered into a Deed of Trust to secure a loan provided by Lin to Peng and Zheng.

3

Zheng, and Peng continued to sell the chairs through the Macsports entity thereafter, perhaps in an effort to distance Tofasco from the infringing products. Accordingly, Tang now seeks to have all three added as parties to this suit. He includes Zheng and Peng as individuals under his theory that they may have been operating Macsports as an unincorporated entity, potentially opening themselves up to personal liability.

## II.  LEGAL STANDARD FOR JOINDER

Tang insists that joinder in this patent infringement case is governed by 35 U.S.C. § 299, which was enacted as part of the Leahy-Smith America Invents Act, Pub. L. 112-29, 125 Stat. 284 (2011). Leahy-Smith was enacted on September 16, 2011—several months after Tang initiated his lawsuit—and does not apply retroactively. *See* 125 Stat. at 333, § 19(e) (codified as note to 28 U.S.C. § 1295). Thus, instead, joinder in this case is governed by the Federal Rules of Civil Procedure. A party can be joined to an action under either Rule 19 or Rule 20. Rule 19 pertains to required, or compulsory, joinder of parties. Rule 20 pertains to permissive joinder of parties. Because Tang's Motion incorrectly identifies 35 U.S.C. § 299 as the appropriate source of law, it does not explicitly specify whether he is seeking compulsory or permissive joinder. However, the Court finds that his Motion can be reasonably construed as one for permissive joinder under Rule 20. *See* Doc. 147, ¶ 5 (asserting that "parties that are accused infringers *may be joined*" under the standard codified at 35 U.S.C. § 299) (emphasis added); *In re EMC Corp.*, 677 F.3d 1351, 1355-56 (Fed. Cir. 2012) (treating 35 U.S.C. § 299 and Fed. R. Civ. P. 20 as corollaries).

Pursuant to Rule 20, defendants may be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or

4

arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "The purpose of [Rule 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974). Thus, "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.* at 1333 (quotation omitted).

### III.   DISCUSSION

#### A.   Choice of Law and Joinder

The Court of Appeals for the Federal Circuit has exclusive appellate jurisdiction over cases which assert claims arising under patent law. 28 U.S.C. § 1295(a)(1). When reviewing procedural questions, the Federal Circuit applies the rule of the regional circuit unless they "(1) pertain to patent law . . . (2) bear an essential relationship to matters committed to [the Federal Circuit's] exclusive control by statute . . . or (3) clearly implicate the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction." *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002) (quotations omitted). This practice sometimes creates uncertainty about whether Federal Circuit or regional circuit precedent applies to a procedural question.

In the context of Rule 19 joinder, several Federal Circuit cases have declared that "joinder is an issue not unique to patent law" and have accordingly applied the law of the regional circuit to such questions. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1461 (Fed. Cir. 1990); *see also Univ. of Utah v. Max-Planck-Gesellschaft Zur Forderung Der*

5

*Wissenschaften E.V.*, 734 F.3d 1315, 1326-27 (Fed. Cir. 2013); *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1220 (Fed. Cir. 2010). On the other hand, the Federal Circuit "generally applies Federal Circuit law, rather than regional circuit law, to the issue of severance" arising under Rule 21. *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 938 (Fed. Cir. 2013) (unpublished) (citing *In re EMC Corp.*, 677 F.3d at 1354). The Federal Circuit's choice of law in severance cases is material because in adjudicating Rule 21 motions, courts look "to Rule 20 for guidance" based on the logic that if parties could be permissively joined under Rule 20, they need not be severed under Rule 21. *In re EMC Corp.*, 677 F.3d at 1356 (quotation omitted). This raises the question of whether courts deciding Rule 20 motions in patent cases should apply their regional circuit's law, as the Federal Circuit has instructed in the Rule 19 context, or the Federal Circuit's law, as it has instructed in the Rule 21 context. Though it would make for an interesting legal exercise, this is a question that the Court ultimately need not resolve. Tang's Motion for Joinder as to Macsports satisfies the two prongs of Rule 20 under any interpretation. Conversely, as to Zheng and Peng, his Motion falls short under any interpretation.

### B. Rule 20 Analysis

Beginning with the first prong of the Rule 20 analysis, Tang plausibly asserts joint, several, or alternative liability between Tofasco and Macsports "arising out of the same . . . series of transactions or occurrences." Fed. R. Civ. P. 20. The series of transactions or occurrences in question is the alleged manufacture, importation, and distribution of infringing chairs by Tofasco and Macsports in the six years prior to the

filing of Tang's suit.[2] Tang alleges that Tofasco and Macsports may be held jointly and severally liable for this conduct based on the "mingling of business practices" between the two companies. (Doc. 148, p. 8). As discussed more fully *infra* in Section III(D), Tofasco and Macsports are virtually indistinguishable entities. For example: allegedly infringing products sold by one or the other company bore labels with both companies' names (Doc. 147-15); Tofasco owns Macsports' trademarks (Doc. 147-8); and Macsports has no employees—all of their labor and management come from Tofasco (Doc. 147-12, pp. 7-10). Based on this relationship, a jury could find that imports and sales of the allegedly infringing products internally attributed to Macsports could legally be attributed to Tofasco (and vice-versa), creating joint and several liability. *Accord Rotating Prods. Sys., Inc. v. Bock Specialities, Inc.*, 42 F. App'x 460, 462 (Fed. Cir. 2002) (unpublished) (affirming district court's imposition of joint and several liability when "all of the acts for which the various defendants had been found liable were part of a common plan or design to unlawfully infringe" upon the plaintiffs' patent (quotation omitted)).

As to Zheng and Peng, Tang's sole argument for holding them liable for the alleged infringement is that they operated Macsports as an unincorporated entity prior to 2009. However, there is simply nothing in the record to support this contention; on the contrary, the record clearly establishes that Macsports was an incorporated entity far before 2009. Zheng or Peng incorporated an entity named Unity New-Tech in 1993. (Doc. 158-6, p. 1). On October 19, 2005, Peng filed a Certificate of Amendment of

---

[2] "Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U.S.C. § 286.

Articles of Incorporation with the California Secretary of State changing the corporation's name to Macsports, Inc. *Id.* at 2. Thus, Tang's claim that Macsports was unincorporated prior to 2009 is simply inaccurate. Further, there is nothing in the record to suggest that Zheng or Peng operated Macsports as an unincorporated entity prior to October of 2005. If anything, the 2005 Certificate of Amendment suggests that Macsports was a d/b/a of Unity New-Tech's prior to that time. Since Tang has failed to allege a plausible theory of liability as to Zheng or Peng, his Motion to join them does not meet the first prong of Rule 20. The Court will therefore deny Tang's Motion for Joinder as to Zheng and Peng individually.

Turning to the second prong, several "question[s] of law or fact common to" Tofasco and Macsports "will arise in th[is] action." Fed. R. Civ. P. 20(a)(2). Tang's Brief in Support (Doc. 148) lists several such questions, a few of which the Court will paraphrase:

> Of the customers supplied by Macsports or Tofasco, whose inventory was used to sell the allegedly infringing products; or, was the inventory jointly owned?
>
> How was revenue from the allegedly infringing sales divided between the two companies?
>
> To what extent does Tofasco control Macsports? Should Macsports be considered Tofasco's alter ego, used to carry out its infringing practices in an attempt to hide liability?
>
> Should all sales of Macsports products be attributed to Tofasco?

*See id.* at 17-19. Indeed, given the way the companies are intertwined, virtually any question of fact or law pertinent to one's liability will also be germane to the other's. Tang has therefore satisfied both prongs of Rule 20(a)(2) as to Macsports.

8

### C. Prejudice

Tofasco contends that the Court should decline to grant Tang's Motion because joinder would cause it unfair prejudice. *See Mosley*, 497 F.2d at 1332 ("Rule 20(b) and Rule 42(b) vest in the district court the discretion to order separate trials or make such other orders as will prevent delay or prejudice. In this manner, the scope of the civil action is made a matter for the discretion of the district court . . . ."); *In re EMC Corp.*, 677 F.3d at 1360 ("[E]ven if a plaintiff [satisfies Rule 20], district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." (quotation omitted)). Tofasco bites off more than it can chew with this argument.

The deposition excerpts filed as part of the record show that Zheng and Peng were less than forthright in their answers related to Macsports. As a few glaring examples, Peng testified that she was introduced to Highmark as a prospective buyer of Macsports through an agent, and denied knowing anybody who worked for Highmark or had any kind of ownership interest in Highmark. (Doc. 147-12, pp. 4, 6). Yet, Peng's relative, Lin, was the Director of Highmark at the time of the purchase. Her testimony on the matter is simply not credible. Zheng, for his part, said that he was "not sure" who he sold Macsports to. (Doc. 147-11, pp. 5-6). Relatedly, Zheng professed to having remarkably little knowledge about the current operations of Macsports. He stated that he could not identify where Macsports was located,[3] and that Tofasco had no affiliation

---

[3] This assertion, which he later partially walked back, is particularly incredible. Independent investigative work performed by Tang revealed that Macsports and Tofasco share the same physical location, or are at least adjacent to one another. *See* Docs. 147-7, 147-14. Furthermore, Peng, and perhaps Zheng, appears to control the company that owns Tofasco's and Macsport's office buildings. *See* Doc. 147-19.

9

with Macsports aside from doing some shipping for them. *Id.* He testified that he does not even know what Tofasco ships for Macsports. *Id.* at 6. He also did not know whether Tofasco owned the Macsports mark, and when confronted with evidence that it did, could not answer why it would. *Id.* at 10. Overall, his testimony was evasive and unhelpful in clarifying the past or present relationship between Tofasco and Macsports. *E.g., id.* at 4-5.

The Court makes no finding at this time as to whether Zheng and Peng were less than honest in their depositions. Perhaps there are satisfactory explanations for their answers. But, the Court does find that any prejudice or harmful delay incurred by Tofasco as the result of Tang's Motion for Joinder is of Tofasco's own making. Zheng's and Peng's testimony made identifying the potential relevance of Macsports' connection to Tofasco unnecessarily onerous for Tang. Accordingly, the Court will not deny Tang's Motion on the basis that it unfairly prejudices Tofasco. The Court is also prepared to take a more active role in policing discovery should similar issues arise down the road.

### D. Failure to State a Claim and Personal Jurisdiction

Lastly, Tofasco asks the Court to deny Tang's Motion because his proposed Amended Complaint would not survive a motion to dismiss as to Macsports. Leave to amend, as would be required by Tang's Motion for Joinder, should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Denial of a motion to amend," however, "is appropriate if amendment would be futile." *Am. Ins. Co. v. St. Jude Med., Inc.*, 597 F. Supp. 2d 973, 979 (D. Minn. 2009) (permitting permissive joinder because proposed claims were not futile). In its most salient argument, Tofasco suggests that Tang's claims are futile because the Court "may" lack personal jurisdiction over

Macsports. (Doc. 158, p. 6). However, the Court finds that it can exercise jurisdiction over Macsports because Tang has plausibly alleged that Macsports is Tofasco's alter ego, and Tofasco has already submitted to this Court's jurisdiction. *See Epps v. Stewart Info. Svcs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) ("Personal jurisdiction can be properly asserted over a corporation if another is acting as its alter ego . . . .").

As a threshold matter, this case presents another interesting choice of law question that the parties did not brief: Whose law applies to the alter-ego inquiry? To focus the question, the Federal Circuit has said: "Since the alter ego issue is not unique to patent law, we apply the law of the regional circuit." *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007). The Eighth Circuit, in turn, applies state law "to determine whether and how to pierce the corporate veil."[4] *Epps*, 327 F.3d at 649. And, it applies the forum state's choice-of-law rules "in cases, like the present one, where the law of some state supplies the rule of decision." *Alumbaugh v. Union Pac. R. Co.*, 322 F.3d 520, 523 (8th Cir. 2003); *see also Bollwerk v. Susquehanna Corp.*, 811 F. Supp. 472, 475-76 (D.S.D. 1993) (applying forum state's choice of law rules in alter-ego context). Thus, the Court's inquiry is whether Arkansas' choice of law rules counsel towards applying Arkansas law to determine whether Macsports is Tofasco's alter ego, or towards applying California law, as the state of Tofasco's incorporation and headquarters.

---

[4] While a review of Eighth Circuit case law evinces a sometimes interchangeable treatment of the terms "alter ego" and "pierce the corporate veil," as this Court understands it, the relationship between the two concepts is that a plaintiff can pierce the corporate veil *by showing that one entity is another's* alter ego. *E.g., Epps*, 327 F.3d at 649; *In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d 1222, 1225 (8th Cir. 1987).

11

Ultimately, the Court is persuaded that Tang has plausibly alleged that Macsports is Tofasco's alter ego under either state's jurisprudence. Beginning with our coastal compatriots, the Eighth Circuit has previously summarized California's articulation of the alter-ego doctrine as follows:

> Under California law, "a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Superior Court,* 83 Cal.App.4th 523, 538, 99 Cal.Rptr.2d 824 (Cal.Ct.App.2000). Nonetheless, in certain "narrowly defined circumstances" and "when the ends of justice so require," a court may disregard the corporate form to hold the shareholders responsible as the "alter ego" of the corporation. *Mesler v. Bragg Mgmt. Co.,* 39 Cal.3d 290, 216 Cal.Rptr. 443, 702 P.2d 601, 607 (Cal.1985); *Slottow v. Am. Cas. Co.,* 10 F.3d 1355, 1360 (9th Cir.1993).

*Tamko Roofing Prods., Inc. v. Smith Eng'g Co.*, 450 F.3d 822, 827 (8th Cir. 2006). California's alter-ego analysis involves two inquiries: "First, the court must find a 'unity of interest and ownership' between the parent and subsidiary such that their separate personalities no longer exist. Second, the court must satisfy itself that if the acts are treated as those of the subsidiary alone, 'an inequitable result will follow.'" *Id.* (quoting *Mesler*, 216 Cal. Rptr. at 448). This does not mean that a corporation must have no legitimate business purpose to justify piercing its veil; rather, it means that "the separate corporate entity will not be honored where to do so would be to defeat the rights and equities of third persons." *Mesler*, 216 Cal. Rptr. at 449 (quotation omitted). "The essence of the alter ego doctrine is that justice be done." *Id.*

The standard is effectively the same under Arkansas law. One of the seminal cases in Arkansas is *Black & White, Inc. v. Love*, 236 Ark. 529 (1963). The Arkansas Supreme Court reasoned that piercing Black & White's corporate veil was appropriate because it and Checker Cab, a formally separate corporation, "were owned by the same

stockholders, operated by the same officers, and the[ir] cabs were interchanged." 236 Ark. at 534.[5] Thus, it would have been "putting fiction above right and justice to allow Black & White to hide behind the corporate entity of Checker" to avoid liability. *Id.* at 534-35. Since *Black & White*, Arkansas courts have consistently applied the alter-ego doctrine "when the facts warrant its application to prevent an injustice." *Humphries v. Bray*, 271 Ark. 962, 966 (Ct. App. 1981); *see also Woodyard v. Ark. Diversified Ins. Co.*, 268 Ark. 94, 99 (1980) (ignoring the corporate form is appropriate where "it is necessary to prevent wrongdoing"). While some cases have stated that the doctrine is applicable, "only if the corporate structure is illegally or fraudulently abused," *Thomas v. Southside Contractors, Inc.*, 260 Ark. 694, 698 (1976), the Arkansas Supreme Court has rejected the proposition that this requires a specific finding that a corporation is "being used to promote fraud." *Ark. Bank & Trust Co. v. Douglass*, 318 Ark. 457, 470-71 (1994). Instead, the corporate form can be disregarded when it is "essentially being used to avoid the effects of the statutes in issue" and allowing corporations "to do indirectly what they could not do directly." *Id.* at 470; *see also Gordon v. Aztec Brewing Co.*, 33 Cal. 2d

---

[5] Notably, *Black & White* applied the alter-ego doctrine outside of the parent-subsidiary, or shareholder-corporation, relationship. The Eighth Circuit has also recognized that "[e]ven a non-owned corporation may act as agent for another corporation," allowing a court to disregard the "fiction of corporate entity." *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975) (quoting *Fisher v. First Nat'l Bank*, 338 F. Supp. 525, 529 (S.D. Iowa 1972)); *see also Epps*, 327 F.3d at 649. Similarly, in *Gordon v. Aztec Brewing*, the California Supreme Court applied the doctrine to allow a plaintiff who sued a corporation to reach a partnership when both entities were owned by the same individuals. 33 Cal. 2d at 520-21. And, a California appeals court has explained that "under the single-enterprise rule, liability can be found between sister companies" when a court finds "that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it." *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249-50 (Ct. App. 1991) (quotation omitted).

13

514, 523 (1949) ("It is not necessary that the plaintiff prove actual fraud. It is enough if the recognition of the two entities as separate would result in an injustice.").

Tang has easily satisfied either state's standard. He has plausibly alleged that Macsports and Tofasco are, in essence, the same entity. They occupy the same (or roughly the same) physical space (Docs. 147-7, 147-14), they have all of the same labor and management (Doc. 147-12, pp. 7-10), they use the same trademarks (Doc. 147-8), they use the same Federal Registration Number (Doc. 147-10), they list Macsports' website on Tofasco's products (Doc. 147-15), and Macsports sells Tofasco's patented products (Doc. 147-13). While the entities may have different owners,[6] Tang plausibly alleges that Macsports' sale to Highmark was little more than an insider transaction, making ownership of the companies different in name only: The director of Highmark at the time it acquired Macsports was Zheng's and Peng's relative (Doc. 147-6); and, Macsports' registered agent is Peng's brother (Doc. 147-9), himself a long-term employee of Tofasco's (Doc. 147-11, p. 2). This extraordinary interconnectivity satisfies the "unity of interest" prong of California's alter-ego test, *Mesler*, 216 Cal. Rptr. at 448, and makes this case favorably analogous to *Black & White* and its progeny.

The Court also believes that "an inequitable result will follow" if Macsports is not treated as Tofasco's alter ego, 216 Cal. Rptr. at 448, as the facts of this case make application of the doctrine necessary "to prevent an injustice." *Humphries*, 271 Ark. at 966. Tofasco contends that it stopped selling the allegedly infringing chair prior to the six-year limitations period for patent infringement claims. (Doc. 158, p. 4). Macsports

---

[6] In part because Highmark is a Cayman Islands company, the record at this time does not conclusively reveal its true controlling party. The record also does not reveal the extent to which Macsports' and Tofasco's finances are interconnected. Further discovery may bring clarity to these issues.

has allegedly continued to sell the chair since then, however. Not finding an alter-ego relationship would potentially allow Tofasco to evade liability for the infringement while reaping its rewards. This is exactly the sort of unjust result the alter-ego doctrine is purposed to prevent.

The Court is cognizant that "[p]iercing the fiction of a corporate entity should be applied with great caution." *Epps*, 327 F.3d at 649. But this is an exceptional case. Rarely will a court be faced with two entities interwoven as Macsports and Tofasco are, and even more rarely will this relationship potentially cause injustice to a third party.

Tofasco having submitted to this Court's jurisdiction already, *see* Doc. 22, pp. 1-2, the Court's treatment of Macsports as Tofasco's alter ego allows it to exercise jurisdiction over Macsports. *See Epps*, 327 F.3d at 648-49. Accordingly, Tang's proposed Amended Complaint would survive a motion to dismiss as to Macsports.[7] Thus, Tang's Motion for Joinder satisfies Rule 20(a), does not unfairly prejudice Tofasco, and is not futile. For these reasons, Tang's Motion is granted as to Macsports.

### E. Tang's Motion to Strike

Tang asks the Court to strike a footnote in Tofasco's Response Brief that references the filing of an errata sheet related to Peng's deposition. Tang also asks the Court to strike two of the arguments raised by Tofasco in its Response Brief. Regardless of whether a motion to strike is the proper vehicle through which to raise

---

[7] Aside from its jurisdictional argument, Tofasco summarily suggests several other reasons why Tang's proposed Amended Complaint would fail as a matter of law as to Macsports. The Court finds these reasons to be unmeritorious. That Tang was aware of possible infringement as early as 2002 and that—according to Tofasco—the nature of the Macsports-Tofasco relationship does not evince intentional fraud do not render Tang's Motion for Joinder futile. The Court also rejects any other argument for denying Tang's Motion that can be gleaned from Tofasco's Response, for similar reasons.

15

such objections, the Court finds that Tang's Motion to Strike is moot. The Court did not credit any of Tofasco's objected-to arguments and did not rely on the possible execution of an errata sheet in reaching its decision on Tang's Motion for Joinder.

## IV. CONCLUSION

For the reasons stated herein, Tang's Amended Motion for Joinder (Doc. 147) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** as to Tang's request to join Macsports, Inc. The Motion is **DENIED** as to Tang's request to join Carol Peng and Edward Zheng. Tang shall have **10 DAYS** from the filing of this Order to file an Amended Complaint conforming to this ruling.[8] Tang's Motion to Strike (Doc. 160) is **DENIED AS MOOT**.

**IT IS SO ORDERED** on this ___29th___ day of April, 2016.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[8] The proposed Amended Complaint attached to Tang's Motion for Joinder includes "Piercing the Corporate Veil" as a separate count. Though the issue was not raised by the parties, the Court notes that the Eighth Circuit has stated that "piercing the corporate veil under an alter ego theory is best thought of as a remedy to enforce a substantive right, and not as an independent cause of action." *Tamko*, 450 F.3d at 826 n.2. Tang should consider the Circuit's formulation when restructuring his proposed Amended Complaint.